IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**KENNETH DALE TEAGUE, JR.**                                                **PLAINTIFF**

**VERSUS**                          **CIVIL ACTION NO. 1:22-cv-00184-HSO-BWR**

**VAN ARNOLD, Deputy**                                               **DEFENDANT**

## REPORT AND RECOMMENDATION

Proceeding under 42 U.S.C. § 1983, *pro se* Plaintiff Kenneth Dale Teague, Jr., filed this lawsuit on July 18, 2022. Compl. [1]. At the time, Plaintiff was housed as a pretrial detainee at the Jackson County Adult Detention Center ("JCADC") in Pascagoula, Mississippi. *Id*. at 2-4. In October 2022, Plaintiff was sentenced on multiple offenses; he is now housed in the custody of the Mississippi Department of Corrections ("MDOC") at the Central Mississippi Correctional Facility in Pearl, Mississippi. Notices [22] [32]; *see also* Inmate Details, Kenneth Teague, https://www.ms.gov/mdoc/inmate/Search/GetDetails/127912 (last accessed June 7, 2023). Plaintiff names Deputy Van Arnold as Defendant, Compl. [1] at 2, and he is proceeding *in forma pauperis*, Order [7].[1] Before the Court is the Motion [25] for Summary Judgment filed by Deputy Arnold, which Plaintiff did not oppose.[2] For the

---

[1] Because Plaintiff is proceeding *in forma pauperis*, his claims are subject to *sua sponte* evaluation and dismissal under 28 U.S.C. § 1915(e)(2). *See, e.g.*, *Smith v. Anderson*, No. 2:11-cv-00221-KS-MTP, 2013 WL 1182995, at *1 (S.D. Miss. Feb. 13, 2013) (dismissing a case based on a motion for summary judgment and a "*sua sponte* . . . evaluation pursuant to 28 U.S.C. § 1915(e)(2)"), *report and recommendation adopted by* 2013 WL 1182984, at *1 (S.D. Miss. Mar. 21, 2013).

[2] Deputy Arnold's Motion [25] was mailed to Plaintiff at his address of record as of the date it was filed. *See* Mot. [25] at 3. The next day, Plaintiff filed a Notice [27] of Change of Address, and counsel for Deputy Arnold forwarded a copy of the Motion [25] and Supporting Memorandum [26] to Plaintiff's new address.

following reasons, the undersigned recommends that the Motion [25] for Summary Judgment be granted and this case dismissed with prejudice.

## I. BACKGROUND

Details of the events giving rise to this lawsuit are disputed. The parties can only agree that Plaintiff entered JCADC on June 14, 2022, and engaged in a physical altercation with Deputy Arnold that day. Since he did not respond to Deputy Arnold's Motion [25] for Summary Judgment, Plaintiff's account of events is drawn from his pleadings. Deputy Arnold's account was adduced from the evidence attached to his Motion [25] for Summary Judgment, which includes Plaintiff's booking sheet [25-1], VitalCore Medical and Behavioral Health Admission Screening records [25-2], Deputy Arnold's affidavit [25-3], Use of Force and Jail Incident Reports [25-4, 25-5], and a video recording of the altercation (conventionally filed with the Clerk of Court). The video recording corroborates Deputy Arnold's account.

### A. Plaintiff's Account

Plaintiff says that he entered JCADC on June 14, 2022, and threatened to "flood the cell." Compl. [1] at 5; Compl. [1-1] at 1. As a result, between 4:00 and 6:00 p.m., Plaintiff claims that he was assaulted by Deputy Arnold. Compl. [1] at 5. Specifically, Plaintiff avers that he was "pulled out of [a] holding cell" by Deputy Arnold and "escorted out of booking . . . into [a] corridor while being choked." *Id.* At that point, Deputy Arnold allegedly "started throwing [Plaintiff's] body and head back and forth into brick walls," which caused two contusions on Plaintiff's head. *Id.* Also,

2

Deputy Arnold allegedly "held [Plaintiff] down" and "punched [him] in [the] face," which "black[ened] [his] left eye and bust[ed] [his] mouth and nose." *Id*.

After the attack, Plaintiff says that he "received no medical treatment." *Id*. Despite suffering injuries to his head, face, and arms, Plaintiff allegedly requested medical care but was "never seen" for these conditions. *Id*. Plaintiff admits receiving limited medical attention for his injured ribs; medical staff ordered an x-ray, but it was never performed. Resp. [11] at 1. When he filed his Complaint, Plaintiff was still experiencing "sever[e] headache[s]," along with "pain in [his] neck and right lower ribs." Compl. [1] at 8.

In addition, Plaintiff claims that he was housed in a cell "with no shower or hot water" from June 15, 2022, until July 7, 2022. Compl. [1-1] at 1-2. This condition allegedly "resulted in [a] [staph] infection on [his] right arm," where he was wounded from the alleged assault by Deputy Arnold. *Id*. at 1. Plaintiff admits that he received medical treatment for the staph infection on July 7, 2022, including bandages, ibuprofen, and antibiotics. *Id*. at 2. He maintains that, as of July 9, 2022, he had "not received any medical treatment for [his] head trauma, headaches, neck or . . . left lower ribs." *Id*. at 2. Finally, Plaintiff claims that he was housed in a cell without air conditioning from June 15, 2022, until he filed his Complaint. *Id*. For relief, Plaintiff seeks $400,000 in monetary damages and that Deputy Arnold "pay for [his] medical expenses upon release." Compl. [1] at 5.

3

**B. Deputy Arnold's Account**

Plaintiff entered JCADC custody on the night of June 14, 2022, after being arrested for possessing a controlled substance (namely, methamphetamine) under Mississippi Code § 41-29-139. Mot. [25-1] at 1. Plaintiff "had a cut on his forehead when he arrived at the jail, but [he] would not let the nurse examine him at that time." Mot. [25-3] at 1. When he was examined by a nurse early the next morning, she recorded that Plaintiff "[a]ppear[ed] under the influence of alcohol or other substances." Mot. [25-2] at 5.

As he was being booked, Plaintiff threatened to flood the booking cell and "fight the other two men already in the cell." Mot. [25-3] at 1; Mot. [25-5] at 1. As a result, Deputy Arnold "decided to move him to [the] transport hallway to await his booking process." Mot. [25-5] at 1. Plaintiff became resistant while moving from one location to the other, struggling against Deputy Arnold's escort. *Id.* Deputy Arnold responded by "grabb[ing] . . . the front of [Plaintiff's] jumpsuit and placing [his] arm around [Plaintiff's] right shoulder" to be escorted. *Id.*[3] As Deputy Arnold maneuvered Plaintiff into a transport holding cell, Plaintiff "continued to resist and was attempting to break [the] hold of him." *Id.*[4] At one point, Plaintiff "was able to shut the door to the transport [holding] cell," but Deputy Arnold "retained [his] hold" of Plaintiff. *Id.*[5]

---

[3] *See also* Video (Booking I3/Fingerprint Machine) at 17:12:13–17:12:25.
[4] *See also* Video (T1/Trans Hold A/Trans Hold B) at 17:13:10–17:14:13.
[5] *See also* Video (T1/Trans Hold A/Trans Hold B) at 17:13:17–17:13:24.

4

While they waited for other officers to arrive, Plaintiff "wrapped one of his legs around [Deputy Arnold's] right leg and attempted to trip [him]." *Id.* Since he could not "gain full control" of Plaintiff, Deputy Arnold "attempted to take him to the ground," but Plaintiff "landed on the restraint box in the hallway." *Id.*[6] Again, Plaintiff got up, and Deputy Arnold took him to the ground. *Id.*[7] Eventually, Deputy Arnold "was able to . . . gain control," but Plaintiff "would not allow [Deputy Arnold] to place [Plaintiff's] hands behind [Plaintiff's] back." *Id.* Deputy Arnold then used "a closed fist strike on [Plaintiff] twice," and other deputies arrived "to assist in gaining control of [Plaintiff] and plac[ing] him in hand restraints." *Id.*[8]

About ten minutes after the altercation began, and two minutes after he was finally restrained, Plaintiff was escorted to medical and assessed by a nurse. *Id.* According to the Jail Incident Report, Plaintiff "sustained no injuries from the use of force, but [he] was treated for [the] wound on his for[e]head" that he had received before being arrested. *Id.* The video evidence shows Plaintiff walking into the medical clinic without assistance.[9] Plaintiff was "given ibuprofen and cleared" before returning to booking. *Id.*; *see also* Mot. [25-4] at 1. The nurse's report reflects the cut on Plaintiff's forehead but no other physical injuries or abrasions. Mot. [25-2] at 3.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no

---

[6] *See also* Video (T1/Trans Hold A/Trans Hold B) at 17:14:04.
[7] *See also* Video (T1/Trans Hold A/Trans Hold B) at 17:14:04–17:14:22.
[8] *See also* Video (T1/Trans Hold A/Trans Hold B) at 17:14:04–17:14:35.
[9] Video (Medical South) at 17:16:30–17:16:46.

5

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quotation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quotation omitted). "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007).

"Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." *Id.* "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges its initial burden of demonstrating entitlement to summary judgment." *Mack v. Waffle House, Inc.*, No. 1:06-cv-00559-RHW, 2007 WL 1153116, at *1 (S.D. Miss. Apr. 18, 2007) (quotation and brackets omitted). "[O]nce a properly supported motion for summary judgment is presented, the nonmoving party must rebut with 'significant probative' evidence." *Id.* (quoting *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978)).

6

### III. DISCUSSION

Plaintiff's pleadings raise four claims: (1) excessive force, (2) denial of medical care after the use of excessive force, (3) temporary lack of a shower and hot water in his cell, and (4) lack of air conditioning in his cell. Deputy Arnold's summary-judgment evidence defeats Plaintiff's first two claims, and his last two claims are not cognizable for the reasons set forth below. Thus, the undersigned finds that Deputy Arnold's Motion [25] for Summary Judgment should be granted insofar as it addresses Plaintiff's first two claims, and that his last two claims should be dismissed for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii).

**A. Excessive Force**

The undersigned recommends that Plaintiff's excessive-force claim be rejected because Deputy Arnold is entitled to qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome the defense of qualified immunity, a plaintiff must "first allege a violation of a clearly established constitutional right," and then "must . . . allege facts showing that the defendant's conduct was objectively unreasonable in light of the law established at the time of the incident." *Carpenter v. Itawamba Co. Jail*, 597 F. Supp. 3d 977, 991 (N.D. Miss. 2022) (citing *Heitschmidt v. City of Houston*, 161 F.3d 834, 836-37 (5th Cir. 1998)). Qualified immunity protects

7

"all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (quotation and alterations omitted). "Ultimately, the touchstone is 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Shumpert v. City of Tupelo*, 905 F.3d 310, 321 (5th Cir. 2018) (quoting *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc)).

"Once an official pleads the defense of qualified immunity, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated a clearly established law." *Estate of Henson v. Wichita Cnty.*, 795 F.3d 456, 462 (5th Cir. 2015) (quotation and alterations omitted). "To defeat qualified immunity, a plaintiff must demonstrate that it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*." *Shumpert*, 905 F.3d at 321 (quotation omitted) (emphasis in original). "All inferences are drawn in the plaintiff's favor." *Narro v. Edwards*, 829 F. App'x 7, 11 (5th Cir. 2020) (quotation and alterations omitted). "But a plaintiff's version of the facts should not be accepted for purposes of

8

qualified immunity when it is blatantly contradicted and utterly discredited by video recordings." *Id.*

The Due Process Clause "protects a pretrial detainee from excessive force that amounts to punishment." *Vanerburg v. Harrison Cnty., Miss. ex rel. Bd. of Super's*, 716 F. Supp. 2d 482, 486 (S.D. Miss. 2010). "This right is violated if there is (1) more than a de minimis injury, (2) which resulted directly and only from the use of force that was excessive to the need, and (3) the force was objectively unreasonable." *Id.* "To determine whether force was excessive, the inquiry is 'whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm.'" *Id.* (quoting *Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993)). When there is no evidence of subjective intent, the trier of fact must base its determination on objective factors, including "(1) the extent of the injury suffered, (2) the need for the application of force, (3) the relationship between the need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of the forceful response." *Id.*

The balance of these factors weighs in favor of applying qualified immunity here. First, it is undisputed that Plaintiff had a visible cut on his forehead after the altercation with Deputy Arnold, Mem. [26] at 5, and the nurse's report (taken shortly after the event) reflects as much, Mot. [25-2] at 3. But Deputy Arnold testified by affidavit that Plaintiff "had a cut on his forehead when he arrived at the jail," Mot.

9

[25-3] at 1, and Plaintiff offers no evidence to rebut that assertion. More notably, though, the nurse's report of Plaintiff's condition after the altercation does not reflect any injuries of the magnitude described in his Complaint. She did not record a "black[ened] . . . left eye" or a "bust[ed] . . . mouth and nose." *See* Compl. [1] at 5. Nor did she record multiple contusions on his head, arms, and ribs. *See id.* Instead, the Use of Force Report shows that Plaintiff's wound was "cleaned," he was "given ibuprofen," and medically "cleared" for booking within a matter of minutes. Mot. [25-4] at 1.

Second, the video evidence demonstrates the need for the application of force. As Plaintiff was being booked, Deputy Arnold made the decision to move him to a different hallway. *See* Mot. [25-5] at 1. During their journey, Plaintiff became increasingly combative, resisting Deputy Arnold's attempt to place him in a new cell.[10] The video recording shows Plaintiff trying to break free from Deputy Arnold's grasp and the two men exchanging open-handed blows, before Deputy Arnold finally escalated his use of force and gained control. Alone in the hallway, Deputy Arnold wrestled with Plaintiff (who was not restrained) for almost two minutes before other deputies arrived. Thus, the relationship between the need for force and the use of force was proportional—satisfying the third factor in Deputy Arnold's favor. These circumstances also inform the fourth factor: the threat perceived by Deputy Arnold.

Finally, the video evidence shows Deputy Arnold's attempt to temper the

---

[10] Video (T1/Trans Hold A/Trans Hold B) at 17:13:10–17:14:35.

severity of his response. As he escorted Plaintiff from booking to the transport hallway, Deputy Arnold grabbed Plaintiff's jumpsuit, pressed (but did not throw) him against the wall, and wrapped his arm around Plaintiff's shoulders to ensure compliance.[11] In the hallway, Plaintiff continued to resist, beating on glass windows, until he and Deputy Arnold reached their new destination.[12] During this time, Deputy Arnold maintained his grip on Plaintiff's shoulders but did not strike or otherwise behave aggressively toward him. It was only after several minutes of Plaintiff's resistance that Deputy Arnold threw him to the ground, straddled his waist, and delivered two closed-fisted blows to obtain Plaintiff's compliance.

The undersigned is of the opinion that Plaintiff has failed to establish a constitutional violation on these facts, and this timeline of events shows an objectively reasonable application of force in light of the circumstances. *See Griggs v. Brewer*, 841 F.3d 308, 315 (5th Cir. 2016) (applying qualified immunity to an officer who "use[d] non-deadly punches to gain control of the arms of a drunken, actively resisting suspect"). Though Deputy Arnold conceivably could have used less forceful conduct, "there was no settled authority to put [him] on notice that his use of force in such circumstances violated [Plaintiff's] constitutional rights." *See id.*; *see also Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012) (directing courts to "evaluate an officer's use of force from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" (quotation omitted)).

---

[11] Video (Booking I3/Fingerprint Machine) at 17:12:13–17:12:25.
[12] Video (T1/Preclass Male Exit) at 17:12:42–17:13:16.

11

In any event, Plaintiff has failed to carry his burden to rebut Deputy Arnold's invocation of qualified immunity. "In general, parties may not rest on their own pleadings at the summary judgment stage." *Narro*, 829 F. App'x at 12. At this stage, "the plaintiff cannot rest on his allegations to get to a jury without any significant probative evidence tending to support the complaint." *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 713 (5th Cir. 1994) (quotation and alterations omitted). Because Plaintiff "did not submit a sworn affidavit or other competent evidence" in response to Deputy Arnold's Motion, "the court cannot credit his version of events." *See Narro*, 829 F. App'x at 12. Deputy Arnold is entitled to qualified immunity on Plaintiff's excessive-force claim. *See id.* at 13 (affirming the district court's judgment in favor of the defendants when the plaintiff failed to meet "his burden to rebut the officers' invocation of qualified immunity").

**B. Denial of Medical Care**

Plaintiff insists that he received no medical care after his altercation with Deputy Arnold. Compl. [1] at 5; Compl. [1-1] at 2. But showing a party's deliberate indifference to a serious medical need "is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). The Fifth Circuit Court of Appeals has thus explained the inquiry:

> A prison official acts with deliberate indifference only if (A) he knows that inmates face a substantial risk of serious bodily harm and (B) he disregards that risk by failing to take reasonable measures to abate it. Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional

12

> circumstances. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.

*Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quotations and alterations omitted).

Plaintiff cannot succeed on this claim for three reasons. First, "the deliberate indifference standard presupposes some level of personal involvement by the defendant." *Amerson v. Pike Cnty.*, No. 3:09-cv-00053-DPJ-FKB, 2012 WL 968058, at *3 (S.D. Miss. Mar. 21, 2012); *see also Martinez v. Dretke*, 263 F. App'x 409, 410 (5th Cir. 2008) (dismissing appeal, in part, because the plaintiff "offer[ed] no explanation . . . regarding the relationship of the named defendants to his claim that officials acted with deliberate indifference to his medical needs"). At no point does Plaintiff allege that Deputy Arnold—the only named Defendant—was personally involved in denying him adequate medical care.

Second, Plaintiff sustained only minor injuries in his altercation with Deputy Arnold. The nurse's report, prepared immediately after the altercation, reflects a cut to Plaintiff's forehead, Mot. [25-2] at 3, but none of the other injuries he allegedly sustained. Absent contrary evidence, the undersigned finds it "implausible that the [nurse] would not have recorded the severe injuries [that Plaintiff] alleged he received." *See Wilburn v. Shane*, No. 98-21077, 1999 WL 706141, at *1 (5th Cir. Aug.

13

20, 1999). Moreover, the competent summary-judgment evidence shows that the cut on Plaintiff's forehead was present when he arrived at JCADC, and he refused to have the wound examined at that time. *See* Mot. [25-3] at 1. In other words, it cannot be concluded from the evidence before the Court that Plaintiff's injury was objectively serious, as required by the Eighth Amendment for a finding of deliberate indifference.

Finally, the record evidence shows that Plaintiff *was* treated for his injuries immediately after and stemming from his altercation with Deputy Arnold. The video recording shows that Plaintiff arrived at the medical clinic a mere two minutes after he was finally restrained.[13] While there, he was examined by a nurse, his "wound [was] cleaned," he was "given ibuprofen," and he was medically "cleared" for booking. Mot. [25-4] at 1; *see also* Mot. [25-2] at 1-6. Plaintiff avers that he later developed a staph infection on his right arm because of the altercation, Compl. [1-1] at 1, but he received treatment for that condition too, Compl. [1-1] at 2. Specifically, Plaintiff received bandages, ibuprofen, and antibiotics. *Id.*

At most, Plaintiff disagrees with the medical treatment that he received at JCADC, but a party's disagreement with medical care does not rise to the level of a constitutional violation. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). "Plaintiff is reminded that prisoners are not entitled to the 'best' medical treatment available or the treatment of their choosing." *Laushaw v. Epps*, No. 2:11-cv-00134-MTP, 2012 WL 3068733, at *5 (S.D. Miss. July 27, 2012) (quoting *McMahon v. Beard*,

---

[13] *Compare* Video (T1/Trans Hold A/Trans Hold B) at 17:14:04–17:14:35 *with* Video (Medical South) at 17:16:30–17:16:46.

14

583 F.2d 172, 174 (5th Cir. 1978)). The undersigned finds no Eighth Amendment violation on these facts.

### C. Lack of Shower and Hot Water in Cell

Plaintiff next avers that he had "no shower or hot water in [his] cell" from June 15, 2022, through July 7, 2022, when it was fixed. Compl. [1-1] at 1-2. On these facts, the undersigned finds that Plaintiff has failed to establish a constitutional violation or that Deputy Arnold is liable for this condition.

"The Constitutional rights of a pretrial detainee flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Porter v. Werner*, No. 1:16-cv-00069-RHW, 2017 WL 599418, at *2 (S.D. Miss. Feb. 14, 2017). "Constitutional challenges may be brought by a pretrial detainee under two alternative theories: as an attack on the 'conditions of confinement' or as an 'episodic act or omission.'" *Id*. (quoting *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009)). A challenge to the conditions of confinement, as here, is a "constitutional attack on general conditions, practices, rules, or restrictions of confinement." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (quotation and alterations omitted). To prevail on this claim, Plaintiff must show "(1) a rule or restriction or the existence of an identifiable intended condition or practice or that the jail official's acts or omissions were sufficiently extended or pervasive; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused a violation of the inmate's constitutional rights." *See Cadena v. El Paso Cnty.*, 946 F.3d 717, 727 (5th

15

Cir. 2020) (quotation and alterations omitted).

"Any punishment of a pretrial detainee will run afoul of the Constitution." *Porter*, 2017 WL 599418, at *2. But the Constitution is not concerned with a *de minimis* level of imposition on pretrial detainees. *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004). "The fact that a detention interfered with a prisoner's desire to live as comfortably as possible does not convert the conditions of confinement into punishment." *Lee v. Hennigan*, 98 F. App'x 286, 288 (5th Cir. 2004).

For many reasons, Plaintiff has failed to make the requisite showing to establish an unconstitutional condition of confinement on these facts. To start, he does not allege that JCADC housed him in a cell without a shower or hot water "as a form of punishment." *See Samiia v. Allison*, No. 1:09-cv-00197-HSO-JMR, 2010 WL 4225887, at *6 (S.D. Miss. Sept. 2, 2010), *report and recommendation adopted by* 2010 WL 4255915, at *1 (S.D. Miss. Oct. 20, 2010). Nor does he allege a rule, restriction, or practice of JCADC to house inmates in cells without showers or hot water. *See Cadena*, 946 F.3d at 727. In fact, Plaintiff admits that both the shower and hot water in his cell were fixed a mere three weeks after he entered the facility. Compl. [1-1] at 2. And Plaintiff never laments that he was *unable* to shower or access hot water— only that those amenities were unavailable in his cell. *Id.* at 1-2. Finally, Plaintiff fails to allege that Deputy Arnold (the only named Defendant) "was even aware of these alleged conditions." *See Samiia*, 2010 WL 4225887, at *6. Plaintiff has thus failed to establish a violation of his constitutional rights or that Deputy Arnold was

16

responsible for causing it. These allegations should be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

### D. Lack of Air Conditioning in Cell

Finally, Plaintiff claims that he lacked air conditioning in his cell from June 15, 2022, through the time he filed his Complaint. Compl. [1-1] at 2. This is another attack on the conditions of his confinement, and it fails for many of the same reasons. That is, Plaintiff does not allege that JCADC housed in him a cell without air conditioning as a form of punishment or pursuant to some rule, restriction, or practice. Plaintiff does not allege that Deputy Arnold was aware of or responsible for the lack of air conditioning in his cell. Nor does Plaintiff allege that he was injured in any way as a result of this condition. *See Fontanez v. Kosco*, No. No. 1:04-cv-0064, 2005 WL 2304510, at *3 (W.D. La. Sept. 20, 2005) (rejecting a conditions-of-confinement claim, in part, because the plaintiff "failed to establish that he suffered from a serious or significant physical or emotional injury resulting from the challenged conditions"). Again, Plaintiff has failed to establish a violation of his constitutional rights or that Deputy Arnold was responsible for causing it. These allegations should also be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

### IV. RECOMMENDATION

The Motion [25] for Summary Judgment filed by Defendant Deputy Van Arnold should be granted, and this case should be dismissed with prejudice.

## V. NOTICE OF RIGHT TO APPEAL/OBJECT

Within fourteen days of being served with a copy of this Report and Recommendation, any party may serve and file written objections with the Clerk of Court. An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. Within seven days of service of the objections, the opposing party must either serve and file a response or notify the District Judge that he does not intend to respond to the objections. L. U. CIV. R. 72(a)(3).

The District Judge shall make a *de novo* determination of those portions of the Report and Recommendation to which objection is made. The District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge may also receive further evidence or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1).

The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *See Wallace v. Miss.*, 43 F.4th 482, 494-95 (5th Cir. 2022) (collecting cases).

**SIGNED,** this 16th day of June, 2023.

*s/ Bradley W. Rath*

BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE